Daniel W. Maguire (SBN 120002)
E-mail:  dmaguire@bwslaw.com
Edith Sanchez Shea (SBN 177578)
E-mail:  eshea@bwslaw.com
Melissa M. Cowan (SBN 175326)
E-mail:  mcowan@bwslaw.com
Karen T. Tsui (SBN 305869)
E-mail:  ktsui@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel:  213.236.0600       Fax:  213.236.2700

Attorneys for Plaintiff
New York Life Insurance Company

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>ARKADY ETIN aka ETIN ARKADY MICHAILOVICH, an individual; MARIMA EPSHTEYN, an individual; GENNADY EPSHTEYN, an individual; VLADIMIR BELOSHAPKIN, an individual; CARE FOR SENIORS, a business entity, form unknown; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT RE LACK OF ENTITLEMENT TO LONG-TERM CARE BENEFITS;**<br><br>**(2) FRAUD AND DECEIT; AND**<br><br>**(3) RESTITUTION**<br><br>**[28 U.S.C. §§§ 1332, 2201 and 2202]** |

Plaintiff, New York Life Insurance Company (hereinafter "New York Life")

alleges as follows:

///

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                    - 1 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

## JURISDICTION AND VENUE

1.      Plaintiff New York Life is a mutual insurance company organized and existing under the laws of the State of New York. It maintains its principal place of business in New York, New York, and is a citizen of the State of New York. At all times relevant to this action, New York Life has been properly licensed as an insurance company in the State of California.

2.      Upon information and belief, Defendant, Arkady Etin, aka Etin Arkady Michailovich ("Etin"), is an individual and citizen of the State of California, and has resided at all relevant times within the County of San Mateo, State of California, and within the Northern District of California.

3.      Upon information and belief, Defendant, Marima Epshteyn, is an individual and citizen of the State of California, and has resided at all relevant times within the County of San Mateo, State of California, and within the Northern District of California.

4.      Upon information and belief, Defendant, Gennady Epshteyn, is an individual and citizen of the State of California, and has resided at all relevant times within the County of San Mateo, State of California, and within the Northern District of California.

5.      Upon information and belief, Defendant, Vladimir Beloshapkin, is an individual and citizen of the State of California, and has resided at all relevant times within the County of San Mateo, State of California, and within the Northern District of California.

///

6.     Upon information and belief, Defendant, Care for Seniors ("CFS"), is a California corporation, located in San Francisco, California, and is a home care agency, engaged in the home health care business.

7.     The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00, as more fully set forth below. In particular, long-term care benefits brought into question by this action exceed the sum of $75,000.00.

8.     Because the parties to this action are diverse, and because more than $75,000.00 is at issue between the parties, exclusive of interest and costs, subject matter jurisdiction is invoked by 28 U.S.C. §§§ 1332, 2201 and 2202.

9.     The Policy which is the subject of this action was entered within the Northern District of California. A claim for long-term care benefits under the Policy at issue was made by Defendant Etin while residing in the Northern District of California. Venue is therefore proper in the Northern District of California.

10.     Plaintiff is unaware of the true names and capacities of Defendants named herein as Does 1 through 10, and has therefore named such Defendants by such fictitious names. Plaintiff will beg leave of Court to amend the Complaint to state the true names and capacities of the Doe Defendants when the same are ascertained.

11.     New York Life is informed and believes, and based upon such information and belief alleges, that each of the Defendants was acting as the agent of the other Defendants and in concert with one another with regard to all actions
///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                    - 3 -                    COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

described herein, and each is therefore liable for all relief claimed and damages caused to Plaintiff.

## FACTS COMMON TO ALL CLAIMS

### The Long-Term Care Policy at Issue

12.     Long-term care insurance policies reimburse policyholders a daily amount (up to a pre-selected limit) for costs incurred for services to assist them with activities of daily living, such as bathing, dressing, toileting or eating, when they are unable to perform those activities on their own. They are designed to reimburse insureds for costs incurred for services and support, including personal and custodial care in a variety of settings such as the insured's home, a community organization, or other facility.

13.     Pursuant to his application of July 28, 2009, New York Life issued its Comprehensive Long-Term Care Insurance Policy No. 10976881 to Defendant Etin, with a policy effective date of August 26, 2009 (hereinafter the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit 1.

14.     Subject to its terms, conditions and limitations, the Policy provides nursing facility and residential care facility benefits, as well as home care benefits. The Policy also provides reimbursement for the costs of durable medical equipment. The Policy carries a maximum $7,192.00 per month benefit limit reimbursement for eligible expenses, with an unlimited lifetime benefit.

15.     Policy benefits are subject to specific benefit eligibility requirements. A threshold requirement is that only a "Chronically Ill Individual" may apply for

///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                - 4 -                COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

benefits. A "Chronically Ill Individual" is defined as any individual who has been certified by a licensed health care practitioner as:

- Being unable to perform, without Substantial Assistance from another individual, at least 2 *Activities of Daily Living* due to a loss of functional capacity which is expected to last at least 90 days; or
- Requiring *Substantial Supervision* to protect [the insured] from threats to health and safety due to *Severe Cognitive Impairment*. (Policy, p. 9)

16.     The Policy defines *Activities of Daily Living* ("ADLs") as bathing, continence, dressing, eating, toileting and transferring. (Policy, p. 8) *Substantial Assistance* is defined as either *Hands-on Assistance* or *Standby Assistance*. (Policy, p. 13) *Hands-on Assistance* means "physical assistance of another person without which You would not be able to perform the *Activity of Daily Living*." (Policy, p. 10) *Standby Assistance* means "the presence of another person within arm's reach of You which is necessary to prevent, by physical intervention, injury to You while You are performing an *Activity of Daily Living*…." (Policy, p. 13)

17.     The Policy requires submission of a notice of claim and written proof of loss in the form of itemized invoices from an insured's care provider(s). Benefit payments are subject to New York Life's confirmation that the insured is eligible for benefits.

18.     In order to confirm the insured's eligibility for benefits, the Policy requires the insured to:

- Have an Assessment performed at New York Life's request and expense to confirm his or her functional and cognitive status;
- Be certified within the last twelve months by a *Licensed Health Care Practitioner* as a *Chronically Ill Individual*;

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                      - 5 -                      COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

- Have a Plan of Care developed by a *Licensed Health Care Practitioner*. That *Plan of Care* must prescribe the types of care, services or supplies that he or she needs; and

- Follow the *Plan of Care*. (Policy, p. 14)

19.     An Assessment is defined as "an evaluation to determine or verify the degree of loss of Your functional capacity or cognitive ability at the time of initial claim and as needed during the period for which You continue to claim benefits under this Policy." (Policy, p. 8)

20.     Assessments to verify eligibility for benefits may include home visits and/or physical examinations, which New York Life may conduct as often as it deems reasonable: "We may examine You or request a *Care Coordinator* to perform an *Assessment* of You when and as often as we may deem reasonable before paying any benefit. Any such examination or *Assessment* will be at Our expense. You must cooperate with the examinations or *Assessment*." (Policy, p. 27)

21.     Such examinations and Assessments are a pre-condition to receipt of benefits. The Policy provides that New York Life "will not pay any benefits under this Policy until the Assessment has been completed and We have a copy of that Assessment." (Policy, p. 15)

22.     No benefits are payable under the Policy for services "[w]hich would not be made in the absence of this insurance." (Policy, p. 24)

23.     The Policy is a reimbursement policy, providing for the payment of benefits "after services have been rendered." If the insured submits proof of loss, evidence of eligible expenses incurred, and meets the requirements of the Policy,

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                    - 6 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

the Policy reimburses the insured for daily expenses actually incurred up to the maximum daily benefit for home care benefits under the Policy.

24.     Proofs of loss include invoices and care logs. Care logs are completed by or on behalf of the insured, and are signed by both the insured and the caregiver, certifying that the listed services were provided to the insured by the caregiver, on the dates indicated.

25.     The Policy provides for New York Life's "right to recover" any benefits paid "in excess of the benefits payable under the provisions of this Policy." (Policy p. 33.)

26.     The Policy also contains a benefit for waiver of premium. Subject to the specific terms of the Policy, this benefit waives the insured's premiums after they satisfy the Elimination Period and are receiving benefits.

**The Claim for Home Care Benefits**

27.     In October 2014, New York Life received a claim from Etin for reimbursement of home health care expenses which were being provided by a private individual, Gary Vaysberg.

28.     Based on the representations by Etin and the information he submitted or which was submitted on his behalf or at his request on January 22, 2015, Etin was certified as a Chronically Ill Individual from November 13, 2014, onward. His claim was approved, and New York Life began to reimburse Etin's home health care expenses.

///

///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                          - 7 -                          COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

29.    Etin's claim was submitted based on a claim of cognitive problems allegedly arising from Schizoaffective disorder and dementia. Etin claimed entitlement to benefits under the Policy in varying amounts, based on his representations that he needed home care, that home care was provided for him, and that he paid for home care services.

**The Benefit Eligibility Assessments**

30.    Throughout the course of his claim, Etin participated in Benefit Eligibility Assessments ("BEA") during which a registered nurse interviews the insured, usually at his or her home, and usually in the presence of a co-habitant or caregiver.

31.    On October 5, 2015, New York Life commissioned a face-to-face BEA interview of Etin conducted by a registered nurse (Cecilia Emelife) on whether and to what extent he was in need of personal home care services. The nurse questioned Etin and his sister, Defendant Marima Epshteyn, who was also present and made representations regarding Etin's functional abilities.

32.    Etin and Marima Epshteyn provided Nurse Emelife the following information during the 3-hour face-to-face interview:

- Etin had not driven a car since January 2010.
- Etin receives assistance 24 hours a day, 7 days a week.
- Etin needs assistance from another person to eat and is unable to eat by himself when there is no one available.
- Etin needs reminders to eat and cueing during the eating process every time he eats.
- Etin needs hands-on assistance to dress.

///

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                  - 8 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

- Etin needs hands-on assistance to bathe, get in and out of the shower or tub, and wash and dry himself due to cognitive impairment.
- Etin needs standby assistance to get in and out of a chair or sofa every time he does so.
- Etin needs hands-on assistance toileting.

33.     As part of the interview, Nurse Emelife administered a short portable mental status questionnaire in which Etin was asked to respond to basic information such as day, date, age, date of birth, etc. Etin responded with one correct response out of 10.

34.     Nurse Emelife also administered a mini-mental status evaluation during which Etin was asked to recall three common objects at one second intervals, subtract serial sevens, identify objects such as a pencil, and copy a design. Etin scored 0 out of 30 on this test.

35.     During the interview, Nurse Emelife asked questions to Defendant Marima Epshteyn regarding Etin's functional capacity. In response to these questions, Marima Epshteyn stated that Etin had demonstrated impaired safety awareness, impaired decision-making, confusion with complex situations, hallucinations, delusions, anxieties, phobias, and reliance on others for decision-making, all within the prior three months. She described to Nurse Emelife that Etin sits in a chair and shows no emotions when asked to perform a task, and that he is unable to move or talk and exhibits flattened behavior.

36.     Defendant Marima Epshteyn further represented to Nurse Emelife that Etin wandered 1 to 3 times a week, is only sometimes oriented, does not understand "911," and is never safe to be left alone.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                    - 9 -                    COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

37.     Based on the representations to Nurse Emelife by Etin and Defendant Marima Epshteyn, New York Life continued to certify Etin as a Chronically Ill Individual, and reimbursed his continuing claims for benefits under the Policy.

38.     On October 18, 2017, New York Life commissioned another face-to-face Benefit Eligibility Assessment interview, which was conducted by Thui Blankinchip, R.N. Nurse Blankinchip conducted a 1-hour, 5-minute interview of Etin and Defendant Gennady Epshteyn, Etin's brother-in-law and husband of Defendant Marima Epshteyn. During that interview, Etin and Gennady Epshteyn made the following representations to Nurse Blankinchip:

- Etin has not driven a vehicle since January 2010.
- Etin receives assistance 24 hours a day, 7 days per week.
- Etin needs hands-on assistance at all times to eat, and needs cueing during the eating process.
- Etin needs hands-on assistance each time he dresses, and he does not dress himself. When asked to raise each hand over his head, Etin portrayed an inability to follow directions and demonstrated agitation.
- When asked to demonstrate how he gets in and out of the shower or tub, Etin portrayed agitation, and an inability to follow directions.
- Etin needed cueing during the bathing process (i.e., "take the soap in your hand and wash your arm").
- Etin needed standby assistance to get in and out of a chair or sofa every time he performed that activity.
- Etin needed help getting around inside his home, walking from room-to-room, as cueing was required for mobility.
- Assistance with personal hygiene following a bowel movement and voiding was required most of the time, and Etin was unable to get to the bathroom without human assistance.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                           - 10 -                COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1
2
3

• Etin experienced bladder incontinence 2-3 times per day, bowel incontinence once per day, and was unable to manage incontinence independently without hands-on assistance from another person.

4

5
6
7
8

39.   As part of the interview on October 18, 2017, Nurse Blankinchip administered both the short portable mental status questionnaire and the mini-mental state evaluation. Etin portrayed an inability to respond to either of these questionnaires due to cognitive impairment and agitation.

9

10
11

40.   As part of the interview, Defendant Gennady Epshteyn made the following independent representations to Nurse Blankinchip regarding Etin:

12  • Etin loses or misplaces belongings.

13  • He forgets to eat.

14  • He gets lost.

15  • He forgets to bathe.

16  • He forgets to take medication.

17
18
19

• He has exhibited impaired safety awareness, impaired decision-making, hallucinations, delusions, anxieties, and sleep disturbance within the past three months.

20
21

• Etin is disoriented, disorganized, and experiences confusion with complex and/or non-routine situations.

22  • He wanders 1-3 times per week.

23  • He is never oriented.

24  • He does not understand 911.

25  • He is not safe to be left alone.

26  ///

27  ///

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                                - 11 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

**The Surveillance**

41.    From August 2017 through July 2018, New York Life conducted a sub-rosa investigation of Etin and captured his activities on surveillance. During the surveillance, Etin exhibited levels of functional capacity inconsistent with his representations to New York Life, his portrayals during the 2015 and 2017 BEAs, and the representations of Defendants Marima Epshteyn, Gennady Epshteyn, and CFS.

42.    In August 2017, Etin was seen driving his car, loading and unloading items from the hatchback, and going on an extended walk alone.



BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1          - 12 -

COMPLAINT FOR: (1) DECLARATORY JUDGMENT RE LACK OF ENTITLEMENT TO LONG-TERM CARE BENEFITS, ETC.

1
2
3
4
5
6
7
8



9       43.    In November 2017, Etin was observed driving, sweeping, carrying and

10  grasping various items including a large rolled-up area rug and bagged grocery

11  items, walking briskly unaccompanied, and with no signs of impairment, hesitation,

12  or restriction.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                          - 13 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1
2
3
4
5
6
7
8



9   44.   In March 2018, Etin was seen driving, shopping at several locations

10  including grocery stores, discount, clothing and department stores, stopping at a

11  bank, and pumping gas into his car.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1
2
3
4
5
6
7
8
9



10  45.   Also in March 2018, Etin was captured driving from San Bruno to

11  Calistoga (a distance of approximately 85 miles), loading/unloading items from his

12  vehicle, with no caregiver in sight or any observable assistance being offered while

13  he ran errands and engaged in these activities.

14
15
16
17
18
19
20
21
22



23  46.   In May 2018, Etin was observed walking briskly along a hiking trail

24  unaccompanied for approximately about an hour, doing sets of bench pushups, and

25  later shopping and browsing through numerous stores unaccompanied, and driving

26  to various locations. He was also observed interacting with others in an apparently

27  positive manner.

28  ///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1        - 15 -        COMPLAINT FOR: (1) DECLARATORY JUDGMENT RE LACK OF ENTITLEMENT TO LONG-TERM CARE BENEFITS, ETC.

1

2

3

4

5

6

7

8

9



10

11

12

13

14

15

16

17

18



19

20

21

22

23

24

25

26

27

28



BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                                    - 16 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1   47.   In June 2018, Etin was observed driving, pumping gas into his car,

2   grasping and carrying items, balancing on one foot while trying on footwear, all

3   without any caregiver in sight.



23   48.   In July 2018, Etin was observed mailing a package at a post office in

24   San Bruno, shopping at supermarkets, visiting the offices of Defendant Care for

25   Seniors in San Francisco, and driving his car on July 23, 2018, to pick up his sister

26   to attend an independent medical examination commissioned by New York Life,

27   which is described below.

28   ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                    - 17 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                - 18 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1

**The Independent Medical Examination**

2      49.     At New York Life's request, Etin was examined by Varsha Sikka,

3   M.D. on July 25, 2018, for an independent medical examination ("IME"). Dr. Sikka

4   is a Board-certified physician in the field of physical medicine and rehabilitation,

5   and pain management.

6

7      50.     Etin appeared at the IME with his sister, Defendant Marima Epshteyn.

8   The examination consisted of a medical history and physical examination.

9   Dr. Sikka also reviewed Etin's medical records, and the surveillance described

10   above (with the exception of the July 2018 surveillance).

11

12      51.     During the IME, Defendant Marima Epshteyn stated that Etin is

13   restless, agitated, needs somebody with him, and 24-hour supervision. She stated

14   that he needs standby to maximum assistance for "everything." She described him

15   as confused with no memory, and an inability to make decisions. She described him

16   as cognitively impaired.

17

18      52.     Dr. Sikka's examination included a physical examination, and her

19   trained observations of Etin's behavior during the examination. Based on the

20   medical history, medical records, surveillance, interview and examination of

21   Defendant Etin and Marima Epshteyn, Dr. Sikka reached the following

22   conclusions:

23      • Although Etin "tried to act like he is cognitively impaired," he

24         exhibited understanding and comprehension of his surroundings, the

25         instructions given to him, and the questions asked.

26      • Although he portrayed a restless demeanor and the inability to follow

27         commands, he was aware of his surroundings, and was "fully

28         independent."

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                    - 19 -          COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

- Etin did not exhibit any signs or symptoms of cognitive impairment.
- Etin "is exaggerating and acting."
- Etin was "feigning or exaggerating functional deficits."

**The Neuropsychological Peer Record Review**

53. At the request of New York Life, Neuropsychologist Elana Mendelssohn, Ph.D., Board-certified in neuropsychology, conducted a peer medical review of Etin's medical records from March 21, 2013 through August 23, 2018. Her review also included Dr. Sikka's IME report, and the surveillance described above, including the July 2018 film.

54. Based on Dr. Mendelssohn's review of these records, she concluded that there were no consistent or reliable signs or symptoms of cognitive impairment, that Etin needed no assistance with, and was fully independent in his activities of daily living including eating, bathing, dressing, toileting, transferring, and continence, from a neuropsychological standpoint. Dr. Mendelssohn further observed that the medical records were "relatively absent of any data related to Etin's neuropsychological functioning and/or necessity for assistance with activities of daily living and need for supervision."

55. Dr. Mendelssohn commented on an inconsistency. At times, Etin's mental status findings were largely unremarkable with intact memory and full orientation, yet other findings describe him as only partially oriented with poor memory, attention and concentration. She also observed that Etin's cognitive screening measures on test examination, which resulted in impaired performance, were inconsistent with the extensive surveillance footage depicting his activity level, noted independence, and lack of supervision.

///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                - 20 -                COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

56.     Based on her review, it was Dr. Mendelssohn's opinion that the information did not support the presence of cognitive impairment in Etin.

**The Care Logs**

57.     The Policy is a reimbursement policy. To claim reimbursement for care received and paid for by the insured, he or she must submit an invoice showing the charges, and a care log detailing the date and services provided by the caregiver. The care logs are signed by both the insured and the caregiver.

58.     From August 2017 through the present, Etin's caregiver was identified as Defendant Vladimir Beloshapkin. Vladimir Beloshapkin worked through Defendant home care agency CFS. From August 2017 to May 2018, Vladimir Beloshapkin prepared handwritten daily visit notes and care logs in support of Etin's claim. On those forms, he represented to New York Life that he had provided home care to Etin 9 hours per day, 7 days per week. This included hands-on assistance to Etin bathing and dressing. He represented providing standby assistance to Etin in transferring, toileting and ambulating, and cueing for eating.

59.     Each of the care logs submitted in support of Etin's claim were signed by Etin under the following statement:

> "I hereby certify that the Personal Care services listed
> above were provided to me, the insured, on the dates
> indicated above. I further understand that benefit
> payments will be made payable to me, the insured."

60.     Each of the care logs were signed by Etin's caregiver under the following statement:

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                - 21 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1          "I hereby certify that the services listed were provided by

2          me in the insured's home on the dates indicated."

3

4      61.    From May 1, 2018 forward, Defendant Beloshapkin verified the care

5 he allegedly provided to Etin through New York Life's LTCFastpay system. This

6 system requires certification of care by the caregiver through a telephone system

7 whereby the caregiver is assigned a caller ID number, and places calls to an

8 assigned number from the insured's home to check in and check out on each day of

9 service.

10

11      62.    Defendant CFS prepared and submitted invoices for personal care

12 services allegedly provided to Etin from May 2017 to the present. These invoices

13 reflect charges for 9 hours per day, 7 days per week.

14

15      63.    Benefits in dispute exceed $75,000.00.

16

17      64.    In response to Etin's requests for reimbursement under the Policy,

18 New York Life has paid him a total benefit amount of $110,060.00 from August 1,

19 2017, to the present. New York Life also waived Etin's premiums under the Policy

20 in the amount of $3,356.94 during that time.

21

22      65.    Etin's monthly benefit under the Policy is $7,192.00, with an unlimited

23 lifetime benefit. Etin claims or may claim entitlement to further benefits under the

24 Policy.

25

26      66.    At all times herein-mentioned, based on information currently known,

27 New York Life is informed and believes that Etin was not entitled to some or all of

28 the benefits already paid to him, and that he and/or Marima Epshteyn, and/or

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
    LA #4818-6658-1624 v1    - 22 -    COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

Gennady Epshteyn and/or Vladimir Beloshapkin did or may have provided inaccurate and false information to New York Life to wrongfully procure benefits under the Policy.

## FIRST CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT RE LACK OF
## ENTITLEMENT TO LONG-TERM CARE BENEFITS
### [Against Defendant Arkady Etin]

67.     Plaintiff refers to and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 66 above, as though fully set forth herein.

68.     As a result of its investigation, most particularly the surveillance described in Paragraphs 42 through 48 above, the IME by Dr. Sikka, and the medical review by Dr. Mendelssohn, New York Life is informed and believes, and thereupon alleges, that Etin is not and was not entitled to benefits under the terms and conditions of the Policy for some or all the period for which he claimed entitlement to those benefits, and for which he was paid.

69.     Plaintiff likewise believes that Etin is not and was not a Chronically Ill Individual, nor does he nor did he require substantial supervision to protect himself from threats to health and safety due to severe cognitive impairment, as required under the terms of the Policy.

70.     An actual dispute and controversy exists between Plaintiff New York Life and Defendant Etin. Plaintiff contends that Etin is not and was not entitled to ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                - 23 -                COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

long-term care benefits or waiver of premium benefits under the Policy. Defendant Etin claims or may claim that he is and/or was entitled to those benefits.

71.     Plaintiff New York Life desires a judicial declaration of its rights and obligations under the Policy.

## SECOND CAUSE OF ACTION
## FRAUD AND DECEIT
### [Against All Defendants]

72.     Plaintiff refers to and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 71 above, as though fully set forth herein.

73.     New York Life is informed and believes that Defendants submitted false information to New York Life during the claims process with the knowledge that it was false, misleading, and untrue. New York Life further believes that Defendants did so for the purpose of submitting and propagating a false claim to New York Life. They supplied this information to New York Life with the knowledge that New York Life would rely upon it to pay benefits under the Policy, and to waive premiums thereunder.

74.     Defendant Marima Epshteyn provided false information to the benefit assessment nurse in 2015, and the independent medical examiner, Dr. Sikka, in July 2018 attesting that Etin needed and received 24-hour a day assistance with his activities of daily living due to severe cognitive impairment. She represented to New York Life through its designated representatives, that Etin was unable to drive, that his family would not allow him to drive, and that he had not driven a vehicle

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                - 24 -                COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

since January 2010, even though Etin himself drove his car to pick up Defendant Marima Epshteyn at her home, drive her to the independent medical examination on July 25, and drive her home again.

75.     Defendant Gennady Epshteyn falsely represented to Nurse Blankinchip on October 18, 2017 that Etin needed and received 24-hour a day assistance to perform activities of daily living due to severe cognitive impairment, and that Etin was unable to care for himself independently.

76.     Defendant Vladimir Beloshapkin falsely represented to New York Life that he provided home health care services to Etin on some or all of the dates and times claimed.

77.     Defendant CFS generated invoices for services allegedly performed for Etin. On a monthly basis, CFS sent New York Life the Care Logs, invoices for home health services, and home care provider information for Etin's claims, which contained false information regarding home care allegedly provided to Etin.

78.     New York Life justifiably relied on the information submitted by Defendants in support of Etin's continuing claim in reaching its decision to waive premiums under the Policy, and to pay benefits thereunder. At the time the information was received by New York Life and at the time that New York Life waived premiums and paid benefits under the Policy, New York Life did not know, nor did it have any reason to know or suspect that the information submitted by Defendants, including the need for, receipt of and payment for home care services was false, misleading, or untrue.

///

///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1          - 25 -          COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

79.     New York Life further justifiably relied on the information supplied by Defendants with regard to Etin's activities, restrictions, limitations, receipt of, need for, and payment for home health services, and his medical condition. This information was given by Defendants with the knowledge that it was false, incomplete, misleading, and untrue, and with the knowledge that New York Life would rely upon it in assessing any potential right by Etin to benefits under the Policy. At the time the information was given, New York Life did not know, nor did it have any reason to know or suspect that it was false, misleading, incomplete and/or untrue.

80.     New York Life was damaged because in reliance on false information submitted, New York Life was induced to pay benefits and to waive premiums under the Policy.

81.     Defendants' conduct described herein was intended by them to cause injury to New York Life, or was despicable conduct carried on by them with a willful and conscious disregard of the rights of New York Life, or was an intentional misrepresentation, deceit, or concealment of a material fact or facts known to Defendants with the intention of depriving New York Life of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code Section 3294, thereby entitling New York Life to punitive damages in an amount appropriate to punish or set an example of Defendants.

///
///
///
///
///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                          - 26 -                          COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1
2
3
4

### THIRD CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT RE RESTITUTION
### [Against Defendant Arkady Etin]

5   82.   Plaintiff refers to and incorporates by this reference each and every
6   allegation set forth in Paragraphs 1 through 81 above, as though fully set forth
7   herein.

8

9   83.   In the period between August 1, 2017 and the present, New York Life
10  paid benefits to Etin in the sum of $110,060.00, and waived premiums under the
11  Policy in the amount of $3,356.94, representing long-term care benefits which were
12  believed to be due and payable under the Policy. Said benefits were paid before
13  New York Life knew, or had reason to know, whether Etin was a Chronically Ill
14  Individual, was in need of or had received home health care, or whether Etin made
15  false and fraudulent misrepresentations regarding his receipt of, need for, or
16  payment for that home care.

17

18  84.   By reason of the above, said benefits represent an overpayment if Etin
19  is not and/or was not a Chronically Ill Individual, not entitled to long-term care
20  benefits under the Policy, and/or if Etin made fraudulent misrepresentations to New
21  York Life in pursuit of long-term care benefits under the Policy.

22

23  85.   Accordingly, if the Court finds that any of these conditions exist, then
24  Etin has been unjustly enriched in the sum of $113,416.94. No part of said sum has
25  been paid, leaving a balance due, owing and unpaid to New York Life in the sum of
26  $113,416.94, together with interest thereon.

27  ///
28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                     - 27 -         COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

WHEREFORE, Plaintiff New York Life Insurance Company prays for judgment as follows:

1.    For a declaration by this Court that Defendant Arkady Etin has not qualified for benefits under the Policy for the period August 1, 2017 to the present, according to proof adduced at trial;

2.    For a declaration by this Court that Policy No. 10976881 issued to Arkady Etin is void as of the date of the onset of the fraudulent claim, and that Arkady Etin has no rights or entitlements under the Policy;

3.    For all benefits and dividends paid or otherwise provided to Arkady Etin to which he was not entitled under the terms of the Policy according to proof adduced at trial, including waived premiums for which Arkady Etin did not qualify, and amounts paid or received for services that were not actually rendered and/or to which Arkady Etin was not entitled;

4.    For a judgment of restitution against Arkady Etin in a sum to be proven at trial, together with interest thereon;

5.    For compensatory damages against all Defendants according to proof;

6.    For punitive and exemplary damages against all Defendants according to proof;

7.    For attorneys' fees expended;

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4818-6658-1624 v1                  - 28 -

COMPLAINT FOR: (1) DECLARATORY
JUDGMENT RE LACK OF ENTITLEMENT TO
LONG-TERM CARE BENEFITS, ETC.

1

2       8.      For costs of suit incurred herein; and

3

4       9.      For such other and further relief as the Court deems just and proper.

5

6
DATED:  December 17, 2018        BURKE, WILLIAMS & SORENSEN, LLP
7

8
                                By:  *s/ Daniel W. Maguire*
9                                     DANIEL W. MAGUIRE
                                      EDITH S. SHEA
10                                    MELISSA M. COWAN
                                      KAREN T. TSUI
11                                    Attorneys for Plaintiff
                                      New York Life Insurance Company
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4818-6658-1624 v1                      - 29 -        COMPLAINT FOR: (1) DECLARATORY
                                                        JUDGMENT RE LACK OF ENTITLEMENT TO
                                                        LONG-TERM CARE BENEFITS, ETC.